## HUTCHINSON vs. THE BOARD OF SUPERVISORS OF SHEBOYGAN COUNTY.

STATUTE OF LIMITATIONS—TAX DEED: *When statute begins to run on claim of grantee in tax deed to have money refunded.*

1. The statute of limitations does not commence to run on the claim of the grantee in a tax deed to have the purchase money refunded by the county by reason of the invalidity of the tax sale, until such grantee has clear and positive information or knowledge of the existence of proof that the sale was invalid.
2. Where the finding was, that one who had been agent of the owner of the land told plaintiff at a certain time that the tax was paid: *Held,* that a statement of this kind from one who was not then owner of or interested in the land, was not sufficient to set the statute running.

PAINE, J., dissenting, holds:
1. That the finding should be construed to mean that the information was positive, and sufficiently reliable to charge plaintiff with further inquiry.
2. That upon defendant's exceptions to the finding, this court is authorized to look into the evidence; and as that shows that proof of the payment of the tax was in the agent's possession when he gave such information to the plaintiff, the statute should be held to have commenced running from that time.

APPEAL from the Circuit Court for *Sheboygan* County.

In March, 1869, the plaintiff presented to the defendant board a claim to have refunded to him, with interest, as prescribed by the statute, certain sums of money paid by him, from 1852 to 1859, inclusive, as taxes upon certain land sold to him at a sale as for delinquent taxes of 1848, and conveyed to him by tax deed in 1851. The board rejected the claim; and plaintiff appealed to the circuit court. The defendant objected to the admission of any evidence in support of the claim, on the ground that it was barred; but the objection was overruled. Plaintiff then made proof of the tax sale and conveyance, and of the payment by him of the amount alleged, and also proof (1) that the taxes for which said land was sold had been paid in fact before the sale; (2) that an entry had been made by the clerk of said board of supervisiors in 1865, in the book of abstract of tax deeds, reciting that plaintiff's said deed was to be cancelled, the receipt for the taxes for which the deed was made having been presented to said clerk by L. Bingham, June 3, 1865; and (3) that this entry was correct. One Cole was then called for the defense, and testified that he was agent at one time for the land in question; that he did not pay the tax thereon for 1848; that some time between 1854 and 1860, he had a talk with plaintiff in regard to the payment of the tax for 1848; that this occured " before the fire of 1860, which destroyed all the records" of the clerk of said board of supervisors; that he then told plaintiff that the tax had probably been paid—that there was some mistake about it, no doubt; that witness afterwards had the receipt for the payment of said tax in his possession; that he had the correction made on the books of the clerk's office before the fire of 1860; that he thought it was noted by the clerk opposite the entry of the sale; that his conversation with plaintiff was before he

got that receipt; that he could not tell how long before the fire he had the correction made, but it was after February, 1857, and before 1860. The plaintiff, as a witness for the defense, then testified that he thought Mr. Cole told him the tax was paid, but he (witness) could not recollect the time of the conversation; that not a great while before or after that time, Mr. Cole wrote him a letter saying that the tax was paid; that this letter was written in December, 1859, and it was about that time that Cole told him the tax was paid.

The court found the facts shown by the evidence in behalf of the plaintiff, and also found that the plaintiff " was told by George C. Cole, about December, 1859, that the tax upon which his deed was issued had been paid before the sale." Upon these facts the court held that the plaintiff's claim was not barred, and rendered judgment in his favor. The defendant excepted to the finding, on the ground, among others, that it did not state the fact that Mr. Cole had, at some time between 1857 and 1860, presented to the clerk of supervisors proof of payment of the tax in question, and that such payment had been noted by the clerk opposite the entry of sale. Thereupon defendant appealed from the judgment.

*J. H. Jones*, for appellant, argued that by sec. 17, ch. 138, R. S., an action " upon a liability created by statute, other than a penalty or forfeiture," must be commenced within six years from the time the cause of action accrued; and that the plaintiff's cause of action accrued when he paid the taxes sought to be recovered, or at least when he discovered the invalidity of his tax deed.

*Bentley & Seaman*, for respondent, argued that his right of action did not accrue until *the board of supervisors* discovered the invalidity of the tax deed; and that the remedy afforded by the statute is not an action within the meaning of the statute of limita-

tions, but is a cumulative remedy by a special statutory proceeding, superadded to the right of action for money had and received. *Norton v. Rock Co.*, 13 Wis. 615 ; *Pelton v. Supervisors*, 10 id. 69.

DIXON, C. J. The statute provides that " if, after the conveyance of any lands sold for taxes, *it shall be discovered that the sale was invalid*, the county board of supervisors shall cause the money paid therefor on the sale, and all subsequent taxes and charges paid thereon by the purchaser, or his assigns, to be refunded, with interest on the whole amount at the rate of seven per cent. per annum, upon the re-delivery of the deed to be cancelled." Laws of 1859, ch. 22, section 27. The question in this case relates solely to what shall constitute *a discovery of the invalidity of a tax deed*, within the meaning of the statute, by the party holding it, which shall require him to present and prosecute his claim against the county, or shall set the statute of limitations running so as to bar him if he does not do so within the time limited. The plaintiff was informed by one Cole, who had previously been an agent of the owner of the land, that the tax for which the deed had been issued " had probably been paid ; that there was some mistake about it, no doubt." This was Mr. Cole's testimony. The plaintiff testified that he thought Mr. Cole told him the tax was paid, and that he received a letter from Mr. Cole, saying that the tax was paid. Such was the evidence relied upon in proof of the discovery, and to set the statute running. The majority of this court are of the opinion that it was insufficient for that purpose. Mere information of this kind, coming from a stranger or person not then the owner or agent, or interested, and more in the nature of rumor than anything else, does not, in our judgment, amount to such a discovery or such knowledge on the part of the holder of the tax deed, as will oblige him to abandon all claim under it, and take upon himself

the hazards, relying upon such mere reports, of commencing a prosecution to recover back his money, in order to avoid the bar of the statute. We think the holder of the deed should have some more direct and authentic information than this, such as the exhibition of the tax receipt, or clear and positive information that it exists and can be procured to substantiate his claim against the county; and that, without such clear and positive information or knowledge, he may well rest upon the general presumption of law in such cases, that the proper public officers have done their duty, and that the deed would not have been issued if the taxes had been paid. We think the judgment of the court below was correct, and should be affirmed.

PAINE, J. I dissent from the conclusion of the court, that the plaintiff, when informed by Cole that the tax on the sale for which his deed was issued had been paid, had not discovered the fact of the invalidity of his deed, sufficiently to set the statute of limitation running. The finding of the court is, that he was told "about December, 1859, by Cole, that the tax had been paid before sale." It was not as full and specific upon the point as the evidence would have warranted. But the only fair construction of such a finding requires the inference that the information was positive and sufficiently reliable to throw upon any man of ordinary prudence the risk of neglecting to inquire further. Although the finding does not state the particulars, it is fairly to be assumed, in construing it, that Cole professed to give the information as being within his own knowledge. And I think it unwarrantable to assume, as the court seems to do, that the information was mere rumor.

But if we look into the evidence, it appears clearly that the information was from one having in his possession the evidence of the fact. Cole had had charge of the land as agent. Although he did not himself

pay that tax, he had had occasion to make such examination in respect to the taxes, that, when the plaintiff first spoke to him about it, he told him that the tax had probably been paid, and that without doubt there was some mistake about it. The opinion of the court seems to assume that this was all the information the plaintiff received from Cole. But Cole swears that after that conversation he had the receipt for the payment of that tax, and caused the entry to be made upon the record, as the statute requires, before the fire of 1860, by which the records were consumed. And the plaintiff himself swears that either before or after the conversation, Cole wrote him a letter saying that the tax was paid, and that this letter was written in December, 1859.

Now it seems very clear that the letter was written after the conversation. Cole's attention having been called to the matter by the conversation, he afterwards examined it, obtained the receipt, had the entry made upon the books, and then wrote to the plaintiff positively that the tax had been paid. He swears positively that it was after the conversation that he had the receipt and caused the entry to be made upon the books. It was entirely natural that he should then have written to the plaintiff, informing him positively, as the plaintiff says he did in the letter, that the tax had been paid. And it is improbable that the letter was written before the conversation, or before he had fully informed himself by inspecting the receipt. That the letter was subsequent to the conversation, and to his obtaining the receipt, is clearly apparent from the fact that in the conversation he only professed to say what was probably the fact, while in the letter he said positively that the tax had been paid. And as the exceptions to the finding are sufficient to require us to look into the evidence, if it is not to be assumed upon the finding alone (as I think it should be) that the plaintiff's information

was reliable, and such as a man of ordinary intelligence should act upon, still, upon the evidence, we should be obliged to find that in December, 1859, the plaintiff was positively informed that the tax had been paid by a man who had the receipt in his possession, and caused the entry to be made upon the proper record. If this is to be treated as rumor, which the party interested may disregard, the statute of limitations in such cases will be of little practical effect.

The question is one of considerable interest. There are many cases of fraud and mistake where the statute begins to run from the time the fraud or mistake is discovered. I have always supposed that the rule in such cases was, that any positive information of the fact, from a source sufficiently reliable to justify a reasonable man in acting upon it, was a discovery sufficient to set the statute running, particularly where it appeared, as in this case, that by acting on the information the party would readily have procured complete evidence. If this is not so, if there is no discovery until somebody having no interest to move in the matter has not only informed the party interested, but has been at the pains to hunt up and thrust into his possession, unasked, all the proofs necessary to establish the fact in a trial at law, there is practically no limitation to actions in such cases. Such seems to me to be the effect of the decision of the court, and for that reason I cannot assent to it.

*By the Court.*—Judgment affirmed.