BROR V. JOHNSON, Plaintiff and Appellant, *v.* ST. PATRICK'S HOSPITAL and STEPHEN L. ODGERS, Defendants and Respondents.

No. 11117.
Submitted June 14, 1966. Decided August 8, 1966.
417 P.2d 469.

Gene I. Brown, Bozeman, for appellant.

Garlington, Lohn & Robinson, Missoula, William Evan Jones (argued), Missoula, for respondents.

Poore, Poore, McKenzie & Roth, Butte, Allen McKenzie (argued), Butte, amicus curiae.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a summary judgment entered against the plaintiff on the grounds that the statute of limitations had run against the plaintiff's claim. The plaintiff filed his action in the district court of the Fourth Judicial District in and for the County of Missoula, against defendants, St. Patrick's Hospital and Stephen L. Odgers.

The facts leading to the cause of action arise from an operation performed on plaintiff on March 28, 1955, by Dr. Stephen L. Odgers, at the defendant hospital located in Missoula, Montana. The operation was performed on plaintiff's right hip to replace his hip joint with a steel joint. Plaintiff alleges that during the course of the operation, and while he was under anesthetic, Dr. Odgers and employees of the defendant hospital carelessly and negligently caused a surgical sponge to be left in his right hip; that after nearly seven years had passed he became aware of a drainage of matter and pus from the hip and that thereafter several pieces of gauze came out of the draining sinus; that he then consulted a medical doctor in Bozeman, Montana, in December 1962, who removed a portion of the surgical gauze. The sinus continued to drain for a period and then closed. However, in July 1965, the sinus resumed its drainage, with more surgical gauze coming out and at that time surgery was performed when it is alleged a surgical sponge was located in the hip.

Plaintiff filed this action against the doctor and defendant hospital. The hospital set up the statute of limitations as a defense and moved for a summary judgment which was granted.

The only issue presented is whether under section 93-2605, R.C.M.1947, the statute of limitations commences to toll from the date of the alleged negligent incident of medical malpractice or from the date the plaintiff discovered the alleged damages from the alleged negligent incident. Such section provides:

"Within three years: * * *

"3. An action upon an obligation or liability, not founded

upon an instrument in writing, other than a contract, account, or promise."

Counsel for both sides, and counsel amicus curiae, submitted full and exhaustive briefs on the question and ably argued the matter to the court. We are grateful to them for care and completeness of their work in assisting the court in its consideration of this field of the law in Montana.

Both counsel set forth the district court's approach to the granting of a declaratory judgment as reliance upon the early Montana case of Coady v. Reins, 1 Mont. 424, as controlling.

The District Court, in the instant case, in a memorandum accompanying its order said:

"The Court, having considered the argument of counsel, and having studied the briefs submitted, must agree with the plaintiff that the modern trend of authority would sustain his position. However, the only Montana case cited to the Court, Coady v. Reins, 1 Mont. 424, which has not been overruled, indicates that the law in Montana is that regardless of the equities in a case of this kind, the statute of limitations runs from the date of the negligent act, not from the date the party discovered it or in the exercise of reasonable diligence, should have discovered it."

It is to this ruling of the district court that the specification of error is directed.

We are urged by the defendant in this matter to sustain the District Court in its reliance upon Coady v. Reins, supra, stating that this has been the law of the state for some ninety-four years. Counsel argues that the case is the legal basis in a myriad of cases throughout the country and that to argue that the case is not stare decisis is inconceivable.

Without being argumentative about the meaning of "myriad" our research reveals no more than ten cases throughout America since 1872 have even cited the case, although it does appear in A.L.R., but even more interesting our research failed to find any Montana citation since 1872.

Whether the failure to ever cite the case again in 94 years gives it the aroma of untouchable authority or the fact that as the appellant points out the statement from the case was dicta is of no import for the present case can be clearly distinguished on the facts. Therefore in our consideration of this type of an action we will look carefully at the facts of each case presented, for the problems presented in each is how and when the patient discovered the negligence.

The usual fact situation presented concerns negligently left gauze, sponges, needles, surgical tools, etc., which are discovered only as here, when a sinus erupts on the patient, because of illness, undergoes further surgery.

The jurisdictions following the English cases interpreting the statutes of limitations, the narrow doctrine of interpretation, hold that knowledge by the injured person of the existence of the tort, is immaterial. It is still true in many states that, in the absence of fraud, or concealment of the cause of action, the statutory period runs from the time the tort was committed although the injured person had no knowledge or reason to know it. Statutes have been enacted in some states providing that the period does not begin to run until the injured person has knowledge or reason to know of the facts, if the tort feasor has reason to know of the facts, or the tort feasor has concealed the existence of the tort. Other states, having no special statutes, have by court decision reached the same result by construction of the general statute. Restatement of Torts, Ch. 46, § 899; 74 A.L.R. 1317.

It is interesting to note that many of the citations, following a strict statute of limitations interpretation, occurred before the modern day of surgery. The English case authority goes back to the period when the barber did the blood letting for healing purposes, long before modern medicine through its superbly educated practitioners, was able to perform the surgical feats of today. As we have developed medically into the twentieth century so have we developed legally when the prob-

lems of medical malpractice have become known to the public. Until the past decade there has been but three exceptions to the rule that the cause of action occurs on the day the foreign object was closed in the wound. Those exceptions are:

(1) The continuing negligence theory which is that a doctor who leaves a foreign object in a patient and continues to care for him, the doctor is held to not only be negligent in his initial surgery, but that the negligence continues in his allowing the object to remain in his patient while under his care. Sly v. Van Lengen, 120 Misc. 420, 198 N.Y.S. 608 (1923).

(2) The contract theory. This exception has been used where the contract statute is longer than the tort statute and the patient frames his pleading in contract to obtain the longer period. Sellers v. Noah, 209 Ala. 103, 95 So. 167 (1923).

(3) The third exception is the theory of fraudulent concealment based upon the premise that a wrongdoer is not permitted to profit by his fraudulent conduct. Under this exception the statute of limitations does not begin to run until the cause of action is discovered or could through diligence have been discovered. Tulloch v. Haselo, 218 App.Div. 313, 218 N.Y.S. 139, 74 A.L.R. 1317 (1926).

Recent development as set forth in 80 A.L.R.2d 368, show a marked change in judicial thinking. The contract theory now appears abandoned; the continuing negligence theory appears to have gained a majority view in the country; and the fraudulent concealment rule, previously limited to California and Louisiana has become the law in at least 14 states.

Of the ten cases citing Coady v. Reins only two concern themselves with sponges left in a patient during surgery. They are: Murray v. Allen, 103 Vt. 373, 154 A. 678, 679 (1931); Vaughn v. Langmack, 236 Or. 542, 390 P.2d 142-148 (1963).

One case, Hahn v. Claybrook, 130 Mo. 179, 100 A. 83, 85, L.R.A.1917C, 1169 (1917), deals with the drug argentum oxide negligently used by a physician treating a skin disease. The court held the action was barred by a three-year limitation due

to the fact skin discoloration occurred within the statutory period. That is not a comparable fact situation to this case.

Coady v. Reins was cited in a dissent in Gillette v. Tucker, 67 Ohio 106, 65 N.E. 865 (1902), where the majority opinion, in a sponge case, held that the statute did not commence to run until the attending physician either abandoned or terminated his service to the plaintiff.

Three cases cited the Coady case that involved fractured bones and the care given by the attending physician and surgeons. Those cases are: Gangloff v. Apfelbach, 319 Ill.App. 596, 49 N.E.2d 795; Schmitt v. Esser, 178 Minn. 82, 226 N.W. 196 (1929); Wetzel v. Pius, 78 Cal.App. 104, 248 P. 288, (1926).

A Nebraska case, Williams v. Elias, 140 Neb. 656, 1 N.W.2d 121, cites Coady only for the rule that the statute begins to run from the negligent act or breach of duty but went on to hold that treatment and employment should be considered as a whole, and if malpractice occurred it should not commence until the treatment ceased.

One case, Oberrich v. County of Fond du Lac, 63 Wis. 216, 23 N.W. 421, 423 (1885) even cites the Coady case as authority in an action to cancel a tax certificate. There the Coady case is cited for the principle that the legislature has the power to extend the limitations upon actions in all cases when a former limitation has not expired.

In addition Coady v. Reins appears in the following A.L.R. citations:

46 A.L.R. 1101n; 79 A.L.R.2d 1084n:

Concerned with the validity and applicability to existing causes of action not already barred of statutes enlarging the period of limitations. The cases mentioned, including the Coady case, involve the issue where the bar of the previous statute of limitations had not fallen when the new statute of limitations was passed.

79 A.L.R.2d 1093—Limitation. Enlarging Period.

80 A.L.R.2d 375n:

The annotations involve situations where it is not necessary to distinguish between the time of the defendant's wrongful act or omission and the time when the patient sustained an injury. The limitation period commences to run at the time of the wrongful act or at the time of the injury, these terms often being used interchangeably.

The Coady case is listed in these annotations.

Respondent, as previously mentioned, argues that Coady v. Reins, supra, is the law in the state and that we would be legislating should we reinterpret our statute of limitation. Factually, the Coady case and this case are entirely different. We are not precluded from adopting the discovery doctrine because of Coady, supra. There the question of discovery never entered into the court's decision for the plaintiff based her case on the defendant's negligence in setting her arm and elbow. Here, we are now confronted with the application of the discovery doctrine for the first time in Montana.

It is arguable whether in adopting the discovery rule we are legislating. In its interpretation in Coady the Court did not legislate, it reinterpreted a statute. This court in other statute of limitation cases has been called upon to interpret the limitation statute as applied to other types of cases.

This court, in Heckaman v. Northern Pac. Ry. Co., 93 Mont. 363, 375, 20 P.2d 258, 261, in a damage case resulting from a flood created by an embankment built by the defendant some nine years before the flood, rejected the defense of the statute of limitations saying: "Under the circumstances shown, no action could have been instituted until injury had been suffered, the general rule being that, when the act or omission constituting negligence causes direct or immediate injury, the action accrues from the time of doing the act, or negligently failing to act; but where injurious only in its consequences, as in the case at bar, the cause of action accrues only at the time of the consequential injury and the statute of limitations begins

to run from that time." More recently this court in the case of Floyd v. City of Butte, 147 Mont. 305, 412 P.2d 823, 23 St.Rep. 269, in a trespass case followed a liberal view in interpreting a statute that required written notice to the city within sixty days of the injury. This court there held that the "provision of section 11-1305 R.C.M.1947, requiring notice of injury, has no application to a suit in equity for relief from wrongful acts in the nature of trespass, which day by day cause injury to property." These cases illustrate the fact that this court has not heretofore followed the rigid rule that a cause must and can only accrue when the negligent act was done.

We have carefully reviewed and considered the various exceptions used by our sister states to the so-called "general rule" of strictly following the statute of limitations. We have examined the cases of the jurisdictions which follow the more liberal fraudulent concealment doctrine. Too, we have considered the continuing negligence theory which now seems to be the majority view. 80 A.L.R.2d 380. We have considered with some interest the "res ipsa loquitur" theory put forward in the dissent in Vaughn v. Longmack, 236 Or. 542, 390 P.2d 142. All of these exceptions to the so-called "general rule" which respondents want this court to follow illustrate that in reality the "general rule" has little to recommend it. Courts out of necessity have tried to make exceptions in order to do justice. We believe that our sister state of Idaho when confronted with the problem presented by the facts of this case has adopted the best reasoned rule, which we adopt and will follow. It is: "Where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body." Billings v. Sisters of Mercy of Idaho, 86 Idaho, 485, 389 P.2d 224, (1964).

Judgment of the district court is reversed and the case remanded for further proceedings.

MR. JUSTICE ADAIR, concurs.

MR. CHIEF JUSTICE JAMES T. HARRISON:

I concur in the result but not in all that is said in the foregoing opinion.

MR. JUSTICE CASTLES:

In concur in the result only. I would not make a long effort to confuse Coady v. Reins, 1 Mont. 424. It simply was not a foreign or hidden object case, and there the claim for relief had accrued at the time of the negligent act. Here, so far as the record discloses, and for the purpose of summary judgment, no claim for relief existed until the foreign object, the sponge, began to cause trouble and damage. Upon trial of the issues, what the medical proof will show, either as to whether any negligence existed, or as to when a claim for relief accrued, remains to be seen.

MR. JUSTICE DOYLE:

I respectfully dissent. Viewed in any perspective the majority opinion overrules by implication, Coady v. Reins, 1 Mont. 424. Further the majority suspend the statute of limitations. The legislature can hear the opposing arguments for the repeal, qualification or amendment of the statute.

This court does not have or possess such inherent right in determining the law.